AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One Apple iPhone, serial number C39WF8FTJCM1,<br>seized from Stephanie Ann MORALES | ) ) ) ) ) ) ) Case No. **19MJ1614** |

FILED
APR 19 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___California___ *(identify the person or describe property to be searched and give its location):* See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___952, etc___ , and the application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Chris Baldwin, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-19-19

*Judge's signature*

City and state: San Diego, California     Hon. Nita L. Stormes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Chris Baldwin, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application authorizing a search warrant for the following digital devices, currently in the custody of the Department of Homeland Security, Customs and Border Protection in San Diego, California, seized from Stephanie Ann MORALES (Defendant) on February 26, 2019, (more particularly described in Attachment A and incorporated herein):

   a. One Apple iPhone, serial number C39WF8FTJCM1, seized from Stephanie Ann MORALES ("MORALES), currently in the possession of the Department of Homeland Security, Customs and Border Protection, under seizure number 2019250400041801, hereinafter referred to as "SUBJECT DEVICE".

2. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

3. Based on the information below, there is probable cause to believe that the SUBJECT DEVICE is an instrumentality used in the commission of a crime and contains evidence of crimes, specifically, violations for distribution of controlled substances, and conspiracy to do the same (21 U.S.C. §§ 841, 846); importation of controlled substances, and conspiracy to do the same (21 U.S.C. §§ 952, 960, 963); and illegal use of a communication facility (21 U.S.C. § 843(b)) (the SUBJECT OFFENSES).

## EXPERIENCE AND TRAINING

4. I am a Special Agent (Criminal Investigator) with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI).

5. I have been employed as a Special Agent (Criminal Investigator) with HSI since April 2016. I am a graduate of the Criminal Investigator Training Program and HSI Special Agent Training Program at the Federal Law Enforcement Training Center. Prior to being employed by HSI as a Special Agent, I was employed by the United States

Border Patrol (USBP) as a Border Patrol Agent for 13 years and am a graduate of the Border Patrol Academy.

6. While employed as a Border Patrol Agent, I also served as a Task Force Officer (TFO) with the US Marshals Service (USMS) San Diego Regional Fugitive Task Force where I was cross-designated as a California state Peace Officer. As a TFO, I performed investigations into violations of state crimes in conjunction with my primary focus on locating fugitives from justice.

7. While employed as a Border Patrol Agent, TFO, and Criminal Investigator, I have worked in various capacities including patrol, intelligence, and investigations. I have conducted investigations of criminal violations relating to the smuggling and transportation of humans, contraband, and controlled substances. I have participated in the arrests of many people for violations of multiple federal laws, including human smuggling, money smuggling, and controlled substance violations. I have performed and witnessed interviews with the arrested persons and with their associates.

8. Based upon my training and experience as a law enforcement officer, and consultations with other law enforcement officers experienced in drug dealing, and trafficking investigations, I am also aware that:

    b. Drug dealers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    c. Drug dealers and traffickers and their accomplices will use cellular telephones to coordinate with each other, contact their buyers and suppliers, and negotiate the purchase or sale of their illegal merchandise;

    d. Drug dealers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their buyers or suppliers will arrive at predetermined locations;

    e. Drug dealers and traffickers will use cellular telephones to direct buyers or suppliers to synchronize an exact drop-off and/or pick-up time of their illegal merchandise;

    f. Drug dealers and traffickers will use cellular telephones to notify or warn

2

their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

9. The use of cellular telephones by individuals involved in the illegal trafficking of controlled substances, tends to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated by a person using a cellular telephone for illegal drug trafficking would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation. In the affidavit, all dates and times are approximate.

12. I have knowledge of the facts set forth below based on my review of the reports, recorded statements, and evidence collected in this case.

**FACTS SUPPORTING PROBABLE CAUSE**

13. On February 26, 2019, at approximately 4:40 p.m., MORALES, a United States citizen, attempted to enter the United States at the San Ysidro, California, Port of Entry via the Secure Electronic Network for Travelers Rapid Inspection (SENTRI) lanes as the driver, registered owner, and sole occupant of a silver 2010 Volkswagen Jetta. A Customs and Border Protection Officer (CBPO) working primary inspections referred MORALES to secondary inspection based on a computer-generated referral. In the secondary lot, a CBPO inspected the trunk and noticed a spare tire that was in the trunk, The CBPO noticed that the spare tire was not fastened to the floor pan of the trunk with

proper hardware as it should be. The CBPO lifted the tire and noticed that it was abnormally heavy. The CBPO bounced the tire on the ground and heard items moving inside of it.

14. A CBPO inspected the vehicle and found packages in the spare tire well and rear quarter panel, and front floor board of the vehicle. A total of 40 packages were recovered and field tested positive for methamphetamine with a gross weight of 20.7 kilograms.

15. A CBPO operating the Z-Portal x-ray noticed anomalies in the spare tire. A CBP Canine Enforcement Officer (CEO) received a positive alert to the spare tire from his Narcotics and Human Detection Dog (NHDD).

16. Another CBPO removed a total of ten (10) plastic-wrapped packages from a inside the spare tire. The packages contained a white powdery substance which field-tested positive for the characteristics of cocaine. The total weight of the packages was 11.08 kilograms (24.42 pounds).

17. CBPOs also seized the SUBJECT DEVICE from MORALES.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the SUBJECT OFFENSES, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, videos, pictures, and other digital information, are stored in the SUBJECT DEVICE.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now

allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## GENUINE RISKS OF DESTRUCTION

22. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

5

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

23. Following MORALES' arrest on February 26, 2019, investigators were able to successfully conduct a limited extraction of SUBJECT DEVICE at the Port of Entry. However a full forensic search has not been performed. There have been no other attempts to obtain data from the Target Device.

## CONCLUSION

24. Based on my training and experience, and the foregoing facts, I believe there is probable cause to believe the items listed above, as described in ATTACHMENT B, which are the fruits, instrumentalities, and evidence of the SUBJECT OFFENSES will be found in the SUBJECT DEVICE, as described in ATTACHMENT A.

Chris Baldwin, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this ___18___ day of April, 2019.

HONORABLE NITA L. STORMES
United States Magistrate Judge

6

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

a. One Apple iPhone, serial number C39WF8FTJCM1, seized from Stephanie Ann MORALES ("MORALES), currently in the possession of the Department of Homeland Security, Customs and Border Protection, under seizure number 2019250400041801, hereinafter referred to as "SUBJECT DEVICE".

seized from MORALES on February 26, 2019, at the San Ysidro Port of Entry in San Diego, California.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of distribution of controlled substances, and conspiracy to do same (21 U.S.C. §§ 841, 846); importation of controlled substances, and conspiracy to do same (21 U.S.C. §§ 952, 960, 963); and illegal use of a communication facility (21 U.S.C. § 843(b)) (the SUBJECT OFFENSES):

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to illegally acquire, import, and distribute controlled substances;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition, importation, and distribution of controlled substances;

    c. tending to identify co-conspirators, criminal associates, sources, or others involved in the illegal acquisition, importation, and distribution of controlled substances;

    d. tending to identify travel to or presence at locations involved in the illegal acquisition, importation, and possession of controlled substances;

    e. tending to identify the user of, or persons with control over or access to, the SUBJECT DEVICE; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.